UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

---

DODORA UNIFIED COMMUNICATIONS, INC.

Plaintiff,

v.

DIRECT INFORMATION PVT. LTD., LOGICBOXES, WEBHOSTING.INFO, TRANSECUTE (I) PVT LTD., RESELLERSRS, INC., AND ANSWERABLE, INC., COLLECTIVELY d/b/a "DIRECTI.COM"

Defendants.

Civil Action
No. _____

---

**MEMORANDUM OF LAW OF PLAINTIFF
DODORA UNIFIED COMMUNICATIONS, INC.
IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

**Introduction**

Plaintiff Dodora Unified Communications, Inc. ("Dodora") is a Massachusetts company that is licensed and accredited to own, register, and resell internet domain names, which it has done, since June of 2001. As of June 2004, Dodora owned or had registered approximately 60,000 domain names. As set forth in detail in its Verified Complaint (incorporated herein by reference), Defendants Direct Information Pvt. Ltd., and its numerous subsidiaries and affiliates including LogicBoxes, webhosting.info, Transecute (I) Pvt Ltd., ResellerSRS Inc. and Answerable, Inc., collectively doing business as "Directi.com" ("Directi" or "Defendants"), wrongfully converted virtually all of Dodora's assets, including approximately 47,000 customers and their domain names and at least $120,000 in customer fees. Directi gained access to and control of Dodora from June 2004 to December 2004 as a result of a default judgment wrongfully obtained

against Dodora in Texas and the appointment of a receiver, who engaged Directi to manage Dodora. Dodora subsequently succeeded in getting the Texas court to vacate the default judgment, to dissolve the receiver and to reject the receiver's contracts with Directi. Nonetheless, during the period when Directi, one of Dodora's main competitors, had control of Dodora, it stole Dodora's customer base and virtually all of its operating capital.

If this preliminary injunction is not allowed, Dodora will be irreparably harmed because it is a start-up company and it will not likely survive without the immediate return of its customer base and operating capital.

### Factual Background

In June of 2004, Dodora owned, managed and controlled approximately 60,000 domain names in its registrant database. Verified Complaint at ¶ 1. Then, its competitors, the named Defendants – collectively doing business as "Directi.com" – gained access to Dodora's domain names and customers through conditional contracts with a Texas receiver that was attempting to collect a default judgment against Dodora. Those contracts were "subject to Court approval." Verified Complaint at ¶ 23. Dodora successfully challenged the entry of that default judgment, resulting in the vacating of the judgment and a dismissal of the Texas action in December of 2004. Verified Complaint at ¶ 24. Directi's conditional contracts with the receiver were never authorized by the Texas court. The receiver was never authorized to dispose of any of Dodora's assets. Verified Complaint at ¶ 24.

In June of 2004, Dodora was earning approximately $20,000 per month based upon either the initial registration of domain names, residual income through renewals of active domain names, or the sale of "dormant" domain names it owned by means of

auction or other disposition. Verified Complaint at ¶ 17. Defendants have refused to pay Dodora the money they collected from Dodora's customers over the six-month period during which time they purported to manage the domain name database on Dodora's behalf. Verified Complaint at ¶¶ 27-28. When Dodora gained back access to its registrant database in December of 2004, the number of domain names in the database had dwindled to only 13,000 in number. Verified Complaint at ¶ 28. Over **three-quarters** of Dodora's assets had been misappropriated by Directi; many, if not all, of these missing domain names are now registered with Defendants. Verified Complaint at ¶ 28. Dodora is barely able to maintain its operations because it has lost so much of its customer base that it is not generating adequate revenue. Verified Complaint at ¶ 31.

This action seeks to return all of Dodora's funds and domain names to their rightful owner and to purge all of Dodora's customer information from Directi's files.

## Argument

### I. A Preliminary Injunction Is Warranted To Prevent The Dissolution Of Dodora's Business.

Dodora is entitled to a preliminary injunction in this matter because: (1) it is likely to succeed on the merits of its claims as Directi has no right to the property and has never had such right since it was engaged by the Texas receivership to manage Dodora's internet business; (2) Dodora will suffer irreparable injury if its property and funds are not returned; (3) the dramatic harm being suffered by Dodora more than outweighs the nonexistent harm to Directi upon the return of these assets; and (4) the injunction will serve the public interest. See, e.g., Equine Technologies, Inc. v. Equitechonology, Inc., 68 F.3d. 542, 544 (1st Cir. 1995) (setting forth preliminary injunction standard).

### A. Dodora Is Likely To Succeed On The Merits Because Directi's Only Claim To Dodora's Assets Is Based Upon Contracts With A Receiver That Were Never Approved By The Court And Directi Has No Equitable Claim To Dodora's Assets Because It Has Not Performed Services To Justify Retention Of Dodora's Assets.

Dodora is likely to succeed on the merits because Directi has no legal right or claim to any of Dodora's assets. Directi was engaged by the Texas receiver to manage Dodora's internet business on behalf of Dodora only for purposes of collecting funds sufficient to pay off the default judgment. When the Texas court vacated the default judgment and dissolved the receivership, Directi's authority (if any) to manage temporarily Dodora's business was also dissolved. Directi never had any right or claim to Dodora's assets.

In addition, the two contracts that the Texas receiver entered into with Directi were explicitly "subject to court approval." The court never approved the receiver's contracts with Directi, because Dodora successfully challenged the default judgment upon which the receiver's authority was based. The Texas court also rejected any and all contracts that the receiver may have entered, including the receiver's contracts with Directi. Verified Complaint at ¶ 24. Thus, Directi cannot even assert a contractual claim to any of Dodora's property, including the fees ("residual income") that it received on behalf of Dodora since June 2004.

Nor can Directi assert an equitable claim to any of Dodora's assets or income. Directi has effectively been a mere passive recipient of Dodora's assets and income since June 2004. Directi has not performed services that would justify its retaining any part of Dodora's property. Verified Complaint at ¶ 26. Indeed, Directi mismanaged Dodora's business and its customer accounts. Verified Complaint at ¶ 29.

4

Directi has no legal or equitable claim to any of Dodora's assets, including, without limitation, the 47,000 domain names and customers it stole and the residual income and fees (totaling in excess of $120,000) it wrongfully converted. Directi has improperly taken advantage of the Texas default judgment – which was later vacated – to try to crush a competitor in the domain name registry business.

### B. Dodora Will Suffer Irreparable Injury If The Requested Preliminary Injunction Is Not Granted.

Dodora is a start-up company that is dependent upon the ownership of its domain names and its customer database to survive. Directi's actions have resulted in the loss of over **three-quarters** of these assets in the last six months. If these assets are not returned, Dodora simply will not survive as a viable ongoing business venture. Verified Complaint at ¶ 31.

### C. The Harm To Dodora If The Injunction Is Not Granted Outweighs Any Potential Harm To The Defendants.

As set forth above, if these assets and funds are not returned, the ongoing harm to Dodora is imminent, certain and will cause the loss of Dodora's business altogether. Directi and the Defendants will suffer no such loss or harm if they merely return Dodora's assets. Directi will merely be placed in the same position it was in before the receiver was appointed. The only business lost by Directi will be that which belonged to Dodora in the first instance. This balancing clearly falls in Dodora's favor.

### D. Dodora's Request For An Injunction Serves The Public Interest In Assuring That The Status Quo Ante May Be Maintained Since Dodora Successfully Challenged The Default Judgment And The Receiver.

Finally, the public interest will be served by the issuance of this injunction. Dodora successfully employed the legal process to seek relief from a judgment in Texas

5

that had been improperly entered. If this injunctive relief is not granted, Dodora's success in vacating the default judgment will be meaningless because the company will still have lost its capital, its customer renewal information and communications, and over 75% of its actual domain name assets. The correct result on public policy grounds is for Dodora to be restored to its position before the entry of the default judgment and the appointment of a receiver by the Texas court. Accordingly, Dodora's assets should be returned and Directi (Dodora's competitor) should gain no competitive advantage through its outrageous misappropriation of Dodora's assets.

## **CONCLUSION**

For these reasons, Dodora respectfully requests that the Court allow Dodora's motion for preliminary injunction and endorse the proposed Order which is attached.

Respectfully submitted,

DODORA UNIFIED COMMUNICATIONS, INC.,

*/s/ Nicholas Carter*
Nicholas B. Carter (BBO # 561147)
Raymond P. Ausrotas (BBO # 640315)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626

Dated: January 5, 2005