UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DODORA UNIFIED COMMUNICATIONS, INC.<br><br>Plaintiff,<br><br>v.<br><br>DIRECT INFORMATION PVT. LTD., LOGICBOXES, WEBHOSTING.INFO, TRANSECUTE (I) PVT LTD., RESELLERSRS, INC., AND ANSWERABLE, INC., COLLECTIVELY d/b/a "DIRECTI.COM"<br><br>Defendants. | Civil Action<br>No. 05-10016-NMG |

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION
TO THE MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, Dodora Unified Communications, Inc. ("Dodora"), respectfully offers this brief reply to Defendants' opposition to the motion for preliminary injunction. Because Dodora received Defendants' opposition papers at the close of business last evening, Dodora limits its reply to the following points which further demonstrate that Directi's actions were improper and unauthorized and that Dodora is likely to succeed on the merits of its claims:

  1. The contracts entered between Directi and the receiver were expressly "subject to court approval," yet they were never approved. In fact, the Court's Order, dated December 13, 2004, expressly denied the receiver's application to approve the contracts with Directi. While the Court generally approved the receiver's "actions" in the same Order, the express and specific denial of the receiver's Application in the same

Order trumps that general and arguably inconsistent language. Otherwise, the denial of the receiver's Application does not have meaning.

2. It is an age-old principle of statutory and contractual construction that terms should be interpreted such that each term is given meaning and where there is conflict among terms the more specific provision should prevail. Applying those principles of construction to the Texas Court's Order, there can be only one reasonable interpretation: the Texas Court approved the actions of the receiver, but did not approve the contracts with Directi. That construction would be consistent with the parties to the Texas action who, in their settlement, expressly agreed that Dodora should be able to pursue claims against Directi. One of the signatories to the settlement agreement was the receiver.

3. Moreover, the receiver and Directi (as an ICANN-accredited registrar) were aware that no registrar's credentials can be assigned without ICANN's approval. See Affidavit of Ron Garraud ("Garraud Aff."), par. 7 (citing ICANN's Registrar Accreditation Agreement). ICANN expressly informed the receiver that Dodora's credentials could not be assigned or sold to another. See Garraud Aff., par. 7. As an ICANN-accredited registrar, Directi also knew or should have known of this prohibition. See Garraud Aff., par. 7. Nonetheless, without authority from ICANN, Directi did effectively achieve an assignment of Dodora's credentials when the receiver gave it control of Dodora's credentials and Directi then transferred Dodora's customers to Directi. See Garraud Aff., par. 8.

4. Contrary to Directi's argument in its Opposition, the Texas Court's Order appointing the receiver did not give the receiver authority to assign Dodora's business to

2

Directi as it did. A copy of this Order is attached at Exhibit A to Mr. Turakhia's affidavit. While the receiver may have been authorized to collect Dodora's assets, the receiver was expressly prohibited from distributing those assets to the plaintiff who had the default judgment. The Order specifically stated:

    a. "[A]ll such property [collected by the receiver] shall be held in custodia legis of said receiver as of the date of this Order."

    b. "It is further ORDERED that the Receiver shall make no distribution to the Plaintiff without motion, notice to Defendant, and order of the court .... The Receiver is ordered to hold all assets and funds pending either the further order of the court, to be made only with prior notice to Defendant ...."

By implication, this prohibition obviously also barred the receiver from assigning or distributing Dodora's assets to Directi or any other third party. In taking over Dodora's business and domain names, Mr. Turakhia admits that he had received, reviewed and fully considered this Order.

5. Directi, therefore, received assignment, transfer and ownership of Dodora's business which it had no authority to take and knew or should have known that it had no authority to take. Nevertheless, it took Dodora's property causing serious damage to Dodora and its business.

## Conclusion

For the reasons set forth in Dodora's original Memorandum of Law, the Affidavit of Ron Garraud and this Reply, this Court should allow Dodora's Motion for Preliminary Injunction.

3

Respectfully submitted,

DODORA UNIFIED COMMUNICATIONS, INC.,

/s/ Nicholas C.

Nicholas B. Carter (BBO # 561147)
Raymond P. Ausrotas (BBO # 640315)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626

Dated: January 21, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on 1/21/05.

4