UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DODORA UNIFIED COMMUNICATIONS, INC., <br>     Plaintiff, <br><br> v. <br><br> DIRECT INFORMATION PVT. LTD., LOGICBOXES, WEBHOSTING. INFO., TRANSECUTE (I) PVT. LTD., RESELLERSRS, INC., AND ANSWERABLE, INC., COLLECTIVELY d/b/a "DIRECTI.COM" <br>     Defendants. | Civil Action No. <br> 05-10016-NMG |

**DEFENDANT'S FURTHER STATEMENT CONCERNING EFFORTS TO AGREE ON ORDER RE: PRELIMINARY INJUNCTION**

At the hearing, the defendant Direct Information Pvt. Ltd. ("Directi") presented evidence demonstrating that the plaintiff, Dodora Unified Communications, Inc. ("Dodora"), had failed to meet its burden to prove a reasonable likelihood of success on the merits, irreparable injury, or that the balance of the equities or public interest favors entering a preliminary injunction. Directi operated, at all times, pursuant to two written agreements, executed by a Texas lawyer who had been duly appointed by a Texas state court to act as a receiver for the assets of Dodora. Dodora orchestrated the dismissal of that case and the dissolution of the receivership through a settlement in which Directi was not involved. Whatever happened in connection with that settlement therefore cannot be used against Directi. Nonetheless, it can be used against Dodora, and the very order to which it agreed, and which its lawyer signed, expressly approved all actions that the receiver took. Among those actions was authorizing Directi to manage Dodora's domain

name registrar business during the receivership and entering into two contracts to facilitate that effort.

As soon as it heard that a settlement had been reached and that the receivership was to be dissolved, Directi tried to transmit to Dodora the very information that is at issue on this motion. Dodora refused even to identify the electronic format in which it wanted that information transmitted and, instead, commenced this litigation. Nonetheless, the evidence demonstrates that the overwhelming majority of the customers and domain names to which Directi had any access either now are being managed by Dodora or made the independent business decision to register their domain names through a registrar other than Directi or Dodora.[1] Whether that translates into a damages remedy, and Directi obviously does not believe it does, is irrelevant for purposes of this motion. Dodora has the great majority of customers and domain names back under its control. If it has a damages remedy with respect to those who have moved elsewhere, it can pursue that through discovery and at trial.

The Court suggested that the parties agree to the terms of an order, considering that Directi has always been willing to transmit the information it has (but has been stymied by Dodora's refusal to address the issue). However, while Directi has made several proposals (summarized in the e-mails attached hereto as Exhibit A),[2] Dodora refuses to accept anything -- other than an exorbitant monetary settlement -- that does not include a "transfer" of the approximately 1760 domain names that customers chose to renew through Directi, with all expenses to be paid by Directi. There are several fundamental problems with that apparently irrevocable demand by Dodora.

---

[1] In fact, Dodora operates through resellers, which themselves are responsible for the management of relationships with customers who use the domain names.
[2] Directi also is prepared to pay to Dodora the balance, of $2,566.42, remaining from payments received from Pool.com after deducting Directi's agreed fee.

2

First, these customers made the independent business decision to renew the registration of their domain names through Directi, which is their unquestioned right. Directi was at the time properly serving them under authority of the Texas receiver. Accordingly, Dodora simply does not have a reasonable likelihood of success on the merits of any legal claim that Directi cannot continue to serve these customers.

Second, Dodora cannot possibly be "irreparably injured" by not being able to service the customers for these 1760 domain names.[3] That is less than 10% of the domain names that Directi obtained any information about and a much smaller percentage of the some 60,000 names that Dodora claims to have "controlled." Moreover, as the attached e-mails show, Directi has offered to set up these accounts in Dodora's name, in essence as a reseller, allowing it to manage them all.

Third, "switching" a domain name in the manner Dodora suggests is accomplished by renewing, for an additional year, the registration of the domain name. This means that Dodora is asking Directi to add one free year of registration to every one of those domain names at a cost of least $6.00 per name, or $10,500 or more. There is no basis for ordering Directi to pay for an annual renewal fee that a customer ordinarily pays. And it would be economically inefficient to do so, in any event, since Dodora (or its handful of resellers) can always convince these customers to renew though it when, anywhere from a few months to less than a year from now, the renewal period for each domain name occurs. Directi has always been willing to provide to Dodora all details of their expiry date and contact information and also ensure that these customers can effectively manage their domain names with Dodora upon expiry. As the profits that Dodora could allege it lost with respect to these domain names cannot exceed about $500, in

---

[3] Since Dodora operates through resellers, the number of its customers that these domain names represents is much, much fewer.

3

total, the transfer and transaction costs of "transferring" these domain names at this point would exceed by a factor of twenty or more any economic loss Dodora could have suffered.

Directi has made good faith and extensive efforts to reach an agreed, fair, workable order. Dodora, however, apparently wants to prevail on all aspects of the case in advance of trial or to extract a monetary settlement that vastly exceeds what could conceivably be at issue in this case. Accordingly, Directi requests that the Court deny in all respects Dodora's motion for a preliminary injunction. Alternatively, Directi requests that the Court enter an order in substantially the form attached hereto as Exhibit B.

DIRECT INFORMATION PVT. LTD.,

By its attorneys,

_____
Dustin F. Hecker, Esq., BBO# 549171
POSTERNAK BLANKSTEIN & LUND LLP
The Prudential Tower
800 Boylston Street
Boston, MA  02199
(617-973-6100)

Dated:  February 2, 2005

### CERTIFICATE OF SERVICE

I, Dustin F. Hecker, hereby certify that on this____ day of February, 2005, I caused a copy of the foregoing to be served by hand, to: Nicholas Carter, Esq., Todd & Weld, 28 State Street, Boston, Massachusetts 02109.

_____
Dustin F. Hecker, Esq.

**Dusty Hecker**

| | |
|---|---|
| From: | Dusty Hecker |
| Sent: | Tuesday, January 25, 2005 9:53 AM |
| To: | 'ncarter@toddweld.com' |
| Subject: | Next steps |

Nick,

I wanted to get the ball rolling on the interim agreement that Judge Gorton suggested we negotiate before he gets to deciding the PI motion. I don' think there's too much left to negotiate; it's really the details of what we can give you in the near term.

I talked with Bhavin and it will be possible to copy many customer e-mails. Directi will send those along with the other customer information it has about all the 18,250 +/- domain names it obtained info about through the receivership. Directi will also send information about the customers who decided to switch to Directi or to other registrars. Directi will agree to send out a mutually-acceptable e-mail to those customers it is serving (for about 1760 or 1780 names), to the effect that they are entitled to switch to Dodora now or at renewal or to stay with Directi, as they choose. As our pleadings state, Directi is not using and will not use any of this info, except for purposes of this (or any related) litigation, for valid tax, legal or accounting purposes, and with respect to the customers it currently is servicing, to continue to do so.

all this of course is without prejudice to our argument that Dodora has no likelihood of success on the merits and that it has not and will not suffer any irreparable injury.

finally, I would like to know whether you are agreeable to dismiss, without prejudice, the claims against the other defendants. I'd like to avoid a motion to dismiss.

Dusty

1

**Dusty Hecker**

| | |
|---|---|
| From: | Dusty Hecker |
| Sent: | Thursday, January 27, 2005 9:57 AM |
| To: | 'ncarter@toddweld.com' |
| Cc: | Bhavin Turakhia (E-mail) |
| Subject: | Dodora v. Directi |

Nick,

I have spoken with Bhavin about the issues you raised concerning the customers Directi is still servicing and the e-mails. Here's what Directi can do.

- As I have made clear, Directi cannot simply "switch" the customers to Dodora without their consent. However, Directi can set up a separate account for these customers/domain names, such that Dodora may manage the relationship with them as, in essence, a reseller for Directi. Directi therefore would still be listed as the registrar for these domain names, but would no longer be responsible for managing them. Dodora would be responsible for tech support and all inquiries the customers might have and all other aspects of the relationship. when those domain names must be renewed, the customers will be entirely free to do so through Dodora or Directi (or some other registrar), as they choose.
- Directi would send an e-mail to the customers, announcing the new relationship. It would say, basically, the following: "As you know, Directi has been managing Dodora customers and domain names under authority of a receiver for Dodora's assets that a court in Texas (USA) had appointed in connection with a case that had been commenced against Dodora there. (Other than its work for the receiver, Directi was not involved in that case.) Dodora resolved that case and, in December 2004, the receivership was dissolved. Assuming you consent, Directi and Dodora have now agreed that Dodora will again manage your account. In order to avoid any immediate costs to you, Directi has arranged that Dodora will be able to manage your account, until renewal, essentially as a reseller. Directi will still be listed as the registrar of record, but Dodora would be responsible for all on-going tech support and other responsibilities of the registrar. You are free to accept or reject this new arrangement and, of course, to choose to renew your registration, either now or at expiration, through Directi, Dodora, or some other registrar of your choosing."
- As far as the e-mails go, Directi believes that it can retrieve virtually all (i.e., all but those that could not be found other than through a manual search of all e-mails since June 15, 2004) of the e-mails through inquiries of its IT systems. this should include in-bound and out-bound e-mails.

Finally, have you decided whether to drop the other defendants from the case? I need to know that. I'd also like to agree to a date for my response to the complaint. how about 2/4?

Dusty

1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DODORA UNIFIED COMMUNICATIONS, INC.,<br>      Plaintiff,<br><br>v.<br><br>DIRECT INFORMATION PVT. LTD., LOGICBOXES, WEBHOSTING. INFO., TRANSECUTE (I) PVT. LTD., RESELLERSRS, INC., AND ANSWERABLE, INC., COLLECTIVELY d/b/a "DIRECTI.COM"<br>      Defendants. | Civil Action No.<br>05-10016-NMG |

**[PROPOSED] ORDER**

After hearing and consideration of the various pleadings, affidavits and exhibits thereto filed with the Court, the Court enters the following order with respect to the plaintiff's motion for a preliminary injunction.

1. The Court does not find that the plaintiff has established that it has a reasonable likelihood of success on the merits on its claims against the defendants, including Direct Information Pvt Ltd.

2. It appears to the Court that Directi is in possession of information concerning customers and domain names previously serviced or registered through Dodora, which Directi obtained in connection with its services for a duly-appointed receiver in the Texas state courts. Dodora has been able to begin servicing customers for the vast majority of the domain names about which Directi has any information.

ID # 420493v01/14386-2/ 02.02.2005

3. Nonetheless, and without admitting it has any obligation to do so, Directi has at all times been willing to transfer to Dodora the information it obtained about these customers and domain names and remains willing to do so today.

4. The Court therefore orders Dodora, within three days of this order, to communicate to Directi's lawyers the electronic format in which it would like this information transmitted. The Court orders Directi to transmit such information, as quickly as practicable after receiving such designation. Directi also shall undertake reasonable and good faith efforts to locate, copy and send to Dodora e-mails and other communications with customers for the domain names it managed under authority of the receiver in Texas.

5. Directi is currently serving customers for approximately 1760 to 1780 domain names previously served by Dodora, as a result of those customers' decisions to renew their domain names through Directi during the course of the Texas receivership. The Court finds that Dodora would not be irreparably injured by Directi's continued servicing of those customers and that the public interest does not favor entering any order with respect to them.

_____

Dated: February   , 2005