UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____
                                                    )
DODORA UNIFIED COMMUNICATIONS,    )
INC.,                                               )
          Plaintiff,                           )
                                                    )          Civil Action No.
          v.                                   )          05-10016-NMG
                                                    )
DIRECT INFORMATION PVT. LTD. and      )
ANSWERABLE, INC.,                            )
          Defendants.                       )
_____)

## DEFENDANT'S MOTION IN LIMINE CONCERNING CERTAIN CONTRACT ISSUES

      The plaintiff, Dodora Unified Communications, Ltd. ("Dodora"), bases all or essentially all of its case on a couple of misleading or demonstrably false allegations; specifically, that the agreements that the defendant, Direct Information PVT. Ltd. ("Directi"), entered into with a duly-appointed receiver in Texas state that they are "subject to Court Approval" and that the Texas court purportedly disapproved the contracts.  From those alleged facts alone, Dodora argues that the contracts thus were void, and that Directi therefore should be held liable to Dodora.  (Complaint ¶¶23-25.)  For various reasons, including that the Texas court did not, in fact, disapprove the contracts, this Court should preclude Dodora from introducing any testimony to challenge the validity of the contracts.

      The relevant contract language on which Dodora relies, in its entirety, is as follows:

    "This agreement is subject to Court Approval in cause number CC-03-3182-E in County Court at Law Number Five, Dallas County; Compana, LLC v. Dodora Unified Communications.  This agreement terminates when the judgment in Cause No. CC-03-3182-E is satisfied or settled."

(Complaint Exh. A (Management Agreement.))[1]

That language, however, does not say what Dodora wants it to say; which is, that "unless the County Court at Law Number 5, Dallas County, expressly orders approval of this agreement, it shall be deemed null and void, ab initio."  It does not say that "a condition precedent to effectiveness of these agreements is the approval of the County Court Number 5."  Rather, all it says is that the agreements are "subject to approval" by that court.  A dictionary definition of "subject" is "Being under the authority, control, or power of another."  *Webster's II New Riverside University Dictionary* (1984).  The language thus essentially states a truism:  Mr. Bernstein was a court-appointed receiver and, as such, his actions and the contracts he entered into always were "subject to" the court's approval or disapproval.

Mr. Bernstein did, in fact, present a motion to the Texas court to approve the contracts, after Dodora began attacking them.  (*See* docket sheet, attached hereto.)  However, the case settled before the Texas court considered that motion.  (*Id.*)  In connection with that settlement, the parties to that case (including, of course, Dodora) prepared an "Agreed Order Closing Receivership."  Directi had no involvement in the settlement.

That agreed order contains two pertinent rulings that eviscerate Dodora's claim that the contracts should be deemed invalid.

"IT IS ORDERED that this receivership be and the same hereby is terminated; . . .

ORDERED that the Receiver's Motion to Approve Contracts is hereby denied *as moot*;

ORDERED that all actions taken by the receiver during the pendency of the receivership are ***APPROVED in all respects***."

(Exh. A hereto, emphasis added.)

---

[1] The second contract, the "BatchpoolAgreement," contains the same language.

Mr. Garraud admitted, at his deposition, that Dodora's lawyers were authorized to agree to that language. "We asked them to put that in." (Garraud p. 309.) Although Mr. Garraud may at trial try to redefine the word "moot", it has a well-know meaning and even he admits he knew the word "means, in essence, academic." (Id.) And the settlement that culminated in that agreed order took several weeks to negotiate, during which Mr. Garraud was represented by Todd & Weld in Boston and another firm in Texas. (Id. Pp. 307-08.)

The highlighted words of the order to which Dodora agreed means that Dodora cannot dispute two critical facts. First, the Texas court simply did not deny the receiver's motion for approval of the contracts, as Dodora alleges, on some substantive basis. Rather, it entered an agreed order closing the receivership and, therefore, denying the pending motion for approval of the contracts "as moot"; *i.e.*, as no longer necessary. Second, Dodora agreed that the court should approve "in all aspects" "all actions taken by the receiver." His actions, of course, included hiring Directi under the two contracts at issue here. Dodora's central factual allegations therefore are demonstrably false. Accordingly, it cannot dispute that the agreements were valid and that they never were in fact "disapproved".

Finally, it is undisputed that Directi performed services under those contracts for approximately six months, after which they ended, according to their terms, at the end of the receivership. Directi, which was party to the agreement, never agreed either to the form of the judgment or to any after the fact voiding of the agreement. It would be completely inequitable now to declare invalid whatever Directi did, under a no longer executory contract, when a settlement that Directi did not even participate in resulted in the Texas court's decision to shelve consideration of the receiver's motion to approve the contracts.

Respectfully submitted,

DIRECT INFORMATION PVT. LTD.,

By its attorneys,

s/Dustin F. Hecker

_____

Dustin F. Hecker, Esq., BBO# 549171
Nancy J. Puleo, Esq., BBO 648457
POSTERNAK BLANKSTEIN & LUND LLP
The Prudential Tower
800 Boylston Street
Boston, MA  02199
(617-973-6100)

Dated:  May 20, 2005

## CERTIFICATE OF SERVICE

I, Dustin F. Hecker, hereby certify that on this 20th  day of May, 2005, I caused a copy of the foregoing to be served by electronic mail, to: David Baker, Esq., 105 Union Wharf, Boston, Massachusetts 02109; and by facsimile to Michael S. Bernstein, Esq., Law Office of Michael Bernstein, P.C., 1301 Northwest Highway, Suite 204, Garland, Texas 75041-5861.

s/Dustin F. Hecker

_____

Dustin F. Hecker

Ronald Garraud

1  involved?
2     A. Do they have any business to be there?
3        MR. BAKER: Just --
4     A. Probably no.
5        MR. BAKER: Don't be argumentative.
6  Answer yes or no if you can.
7        THE WITNESS: No.
8     Q. They were not involved.
9        MR. HECKER: Mark this as the next
10 exhibit, an agreed order closing receivership.
11       (Marked, Exhibit 21, agreed order
12 closing receivership.)
13       MR. HECKER: Exhibit 22 is an agreed
14 order of dismissal; Exhibit 23 is a release of
15 judgment lien; and Exhibit 24 is an agreed order of
16 dismissal.
17       (Marked, Exhibit 22, agreed order of
18 dismissal.)
19       (Marked, Exhibit 23, release of judgment
20 lien.)
21       (Marked, Exhibit 24, agreed order of
22 dismissal.)
23    Q. And tell me whether or not you recognize
24 these documents as documents that were prepared in

1  connection with the settlement with Compana and Mr.
2  Bernstein.
3     A. Yes. I mean, that's what followed this, you
4  know, proposed settlement. They go and, you know,
5  rewrite it to language and then they propose it to
6  the court to sign.
7     Q. And so for a period of almost two weeks
8  Mr. Bernstein, your lawyers, and Compana's lawyers
9  were drafting documents which were going to be filed
10 in court to resolve the litigation in receivership?
11    A. Yes.
12    Q. And these constitute at least some of the
13 documents that were filed in court, correct?
14    A. Yeah. That's the one there.
15    Q. And these are documents your lawyers were
16 involved in drafting, right?
17    A. That's correct.
18    Q. Did you review them before they were filed in
19 court?
20    A. No, I don't think I reviewed them.
21    Q. But Dodora's lawyers were, in fact,
22 authorized to negotiate these and submit them to the
23 court, correct?
24    A. Yes, because we got the actual -- if I

1  remember, yes, they discussed -- Randy and Nick
2  discussed the language of the order.
3     Q. You had lawyers in Massachusetts, being
4  Todd & Weld, and lawyers in Texas, being Mr. Shaffer
5  and his firm?
6     A. Working together.
7     Q. They were working together to prepare these
8  documents for you?
9     A. Yes.
10    Q. Look at whatever the exhibit is that is the
11 agreed order closing receivership. Is that 21?
12    A. Yes.
13    Q. Look at the third paragraph, which reads,
14 "Ordered: That all actions taken by the receiver
15 during the pendency of the receivership are approved
16 in all respects."
17    A. Yes.
18    Q. Is that language that your lawyers were
19 authorized to agree to on your behalf?
20    A. Yes.
21    Q. And Mr. Shaffer, the attorney for Dodora, did
22 sign this document, correct?
23    A. That's correct.
24    Q. And the second paragraph reads, "Ordered:

1  That the receiver's motion to approve contracts is
2  hereby denied as moot."
3     A. That's correct.
4     Q. Is that, in fact, the same language that
5  appeared in Exhibit 20, the settlement agreement
6  that was signed at the mediation?
7     A. Yup, that's correct.
8     Q. And again, your lawyers were authorized to
9  agree to that language in the agreed order closing
10 receivership?
11    A. That's correct. We asked them to put that
12 in.
13    Q. What do you understand the word "moot" means?
14    A. That means there was never a legal -- I know
15 what "moot" means. They will never have legal final
16 decision.
17    Q. Do you know that the word "moot" means, in
18 essence, academic?
19    A. Yes, I do.
20    Q. Just quickly, if you could take a look at
21 maybe the last two, the two different forms of
22 agreed order of dismissal.
23    A. Right.
24    Q. One of them, the one-page document contains

6/6/03 Default Judgment
(m/o copies 6/10/03)                    103-0278-0279

NOTICE OF DEFAULT JUDGMENT MAILED

1/9/04- m for receiver ex parte Granted
                                    106, 0316-0319

3/19/04 m to require parties
to cooperate w/ receiver    107/1142-1143

6/4/04 TRO denied

9-15-04 Order Granting Motion to
Withdraw By Defendant's Counsel
                                    110, 1250

10/22/04 bill review - no service on d, hearing
did not go forward

10/26/04- Mr. Blenden agrees to appear
for company - $62.00 - $8000 approved
for receiver - preliminary hearing
on bill of review set for 12/3/04 &
trial on merits for 12/13/04

10/29/04 Mediation Order        111, 759

10/29/04 Order Approving 2nd Amended
Receiver's 1st Interim application
for Authority to disburse funds
and approval of Receiver's fees
                                    111, 760-761

12/13/04 Agreed Order of Dismissal
                                    112, 241-242

12/13/04 Agreed Order Closing
Receivership        112, 240

*John Michael Amis*
1

**JUDGE'S DOCKET,**    COUNTY COURT AT LAW NO 5

Action:  TRO                          Filing:  03-21-03        No.  03-03182-E

PARTIES
COMPANA LLC

*MARK BLENDEN*    ATTORNEYS  *024863*
JACKSON THOMAS P                JURY FEE PAID
LAW OFFICE OF THOMAS P JACKSON
12655 NORTH CENTRTAL EXPY #812
DALLAS                TX  75243
872 387 0007   10496600

VS.
DODORA UNFIED COMMUNICATI

*Randal C. Shaffer 18085800*

5/28/03 Certificate of Last Known Address
6/4/03 Affidavit of Thomas P. Jackson

1/9/04 Motion for Receivership-Ex parte

1/13/04 Oath of receiver
3/3/04 Receiver's Motion to Require Parties
to Comply with Receivership Order

0
3
-
0
3
1
8
2
-
E

*8-26-04 Receiver's 1st Interim*
*Application for Authority to disburse*
*funds and Approval of Receivers f*

*9-9-04 motion to withdraw*
*by Defendant's Counsel*
*10/20/04 2nd amended Receiver*
*1st interim application for au*
*thorization to disburse fun*
*and approval of receivers*
*fees*

**SETTINGS**

21
4-14-05

☑ 012/017

No. CC 03-3182-E

| | |
|---|---|
| Compana LLC | In The County Court |
| vs. | At Law Number Five Of |
| Dodora Unified Communications, Inc. | Dallas County, Texas |

### Agreed Order Closing Receivership

IT IS ORDERED that this receivership be and the same hereby is terminated; and that the receiver be, and he is released and discharged from all obligations under his bond and under this receivership;

ORDERED that the Receiver's Motion To Approve Contracts is hereby denied as moot;

ORDERED that all actions taken by the receiver during the pendency of the receivership are APPROVED in all respects;

ORDERED that all funds on deposit with the receiver as of 11/30/04 ($21,710.12) shall be distributed to the Receiver as additional approved receiver's fees and to Mark Blenden as per their agreement;

ORDERED that the Clerk of the Court immediately release and pay the sum of $100.00 which is being held as a cash bond in the registry of this court, to The Blenden Law Firm, P.O. Box 560326, Dallas, Texas 75356. The Clerk may deduct its statutory fee.

This ORDER terminates any levy or attachment not already released by the receiver.

SIGNED ON December 13, 2004

_____
Mark Greenberg, Judge Presiding

AGREED:

_____
Randal C. Shaffer, Attorney for
Dodora Unified Communications, Inc.

_____
Mark P. Blenden, Attorney for
Compana L.L.C.

_____       12/7/04
Michael S. Bernstein, Receiver