UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DODORA UNIFIED COMMUNICATIONS, INC.<br><br>Plaintiff,<br><br>v.<br><br>DIRECT INFORMATION PVT. LTD., et al<br><br>Defendants. | Civil Action<br>No. 05-10016-NMG |

PLAINTIFF'S OBJECTION TO MOTION IN LIMINIE
CONCERNING DAMAGES TESTIMONY

NOW COMES Dodora Unified Communications, Inc., (hereinafter "Dodora") and objects to the motion in limine of Direct Information Pvt. Ltd. regarding damages testimony. In support of this objection, Dodora states as follows:

1. The defendant seeks to bar Dodora from presenting testimony concerning any damages, or that testimony be limited to testimony concerning approximately $13,00 that Directi alleges is the total amount that it retained as its fee for work performed on behalf of a received of Dodora's assets appointed by a Texas court. Allowance of the motion would, of course, render moot the entire case; if the plaintiff cannot prove its damages, there is no case. As with the motion in limine regarding contract issues, the present motion actually is seeking summary judgment without meeting the requirements of Fed.R.Civ.Pro. 56.

2. This court has stated the following concerning summary judgment:

> The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir.1991)(quoting <u>Garside v. Osco Drug, Inc</u>., 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based

> upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u> A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. <u>Celotex Corp. v. Catrett,</u> 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. <u>O'Connor v. Steeves</u>, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.
>
> <u>Livingstone Flomeh-Mawutor v. Banknorth, N.A</u>., 350 F.Supp.2d 314 (D. Mass., 2004).

3. The undisputed facts in this case show unambiguously that Dodora was damaged. Directi does not dispute that it assumed dominion and control over Dodora's assets, but claims that it did so pursuant to a contract or contracts with the receiver appointed in the Texas litigation. Thus Directi essentially claims that any harm Dodora suffered was not the result of Directi's actions because those actions were lawful. Directi further tries to lay the fault for any damage suffered by Dodora at the feet of the receiver.

4. The problem with that viewpoint is that it is also undisputed (or at least undisputable) that the Texas court never approved the contracts between the receiver and Directi. For the reasons set forth in Dodora's objection to the motion in limine regarding contract issues, incorporated herein by reference, Dodora maintains that the contracts were not valid, and that Directi knew or should have known that assuming dominion and control over Dodora's assets without an Order from the Texas court was wrongful. Directi cannot hide behind the receiver's cloak as its defense.

5. As Directi admits, not all of the counts of the complaint call for money damages. In addition, the count pursuant to Mass.Gen.Laws Ch. 93A is one that is generally reserved to the court, not the jury. See Bowers v. Baystate Technologies, Inc., 101 F.Supp. 2d 53 (D.Mass. 2000). The remaining counts sound primarily in tort.

6. Count II alleges that Directi tortuously asserted dominion and control over Dodora's assets notwithstanding a demand for their return, resulting in conversion. There is little, if any, dispute over the fact of dominion and control. Indeed, it was not until this Court issued a Preliminary Injunction compelling Directi to return assets that Dodora recovered any of them. Even then, Directi hedged, claiming that some of Dodora's clients had decided to remain with Directi and that accordingly, Directi should retain those accounts. Directi claims that there were only about 18,000 domain names and that it only received about $13,000 from its activities on behalf of the receiver.

7. Absent an Order signed by the Texas court, Directi should not have taken control of Dodora's assets. The <u>receiver</u> was authorized to do so, but the Texas court never authorized the receiver to transfer the assets to Directi.

> The tort of conversion requires an intentional or wrongful exercise of dominion or control over personal property of another by one with no right to immediate possession. See Third Nat'l Bank v. Continental Ins. Co., 388 Mass. 240, 446 N.E.2d 380, 383 (Mass.1983); Restatement (Second) of Torts § 222A (1965). An action for conversion " 'cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself or to deprive the rightful owner of it, or destroyed the property.' " Grande v. PFL Life Ins. Co., No. 9663, 2000 WL 1476676, at *4 (Mass.App.Div. Sept.27, 2000) (quoting Spooner v. Manchester, 133 Mass. 270, 273 (1882)). It is no defense to conversion for defendant to claim that he acted in good faith, reasonably believing that he had a legal right to possession of the goods. See Kelly v. Dubrow, No. 1313, 2001 WL 287490, at *3 (Mass.App.Div. Mar.20, 2001)

Kelley v. LaForce, 288 F.3d 1 (1st Cir. (Mass.) 2002).

8. Directi never had any legal right to possession of Dodora's assets, and its argument that it had a good faith belief in its legal right to possession is unavailing.  Id.  Dodora's damages commenced at the time Directi wrongfully assumed dominion and control.

9. Directi claims that Dodora cannot prove its damages because it has not proposed to call an expert witness.

> "Whether a witness is qualified to testify as to value is a preliminary question of fact for the trial judge and that finding will not be disturbed on appeal 'unless upon the evidence it [is] [clearly] erroneous as matter of law.' " Selby Assocs. v. Boston Redev. Authy., 27 Mass.App.Ct. 1188, 1190, 543 N.E.2d 28 (1989), *quoting from* Rubin v. Arlington, 327 Mass. 382, 384, 99 N.E.2d 30 (1951). … Although a property owner's opinion of value cannot be based solely on the opinions of others, *see* Maher v. Commonwealth, 291 Mass. 343, 348, 197 N.E. 78 (1935); Downey v. Union Trust Co. of Springfield, 312 Mass. 405, 416-417, 45 N.E.2d 373 (1942), the owner may consider the opinion of others and market information in an effort to inform his own opinion of the value of his property. *See* Willey v. Cafrella, 336 Mass. 623, 624-625, 146 N.E.2d 895 (1958).

Bleicken v. Stark, 61 Mass.App.Ct. 619, 813 N.E. 2d 572 (2004).

10. Massachusetts law clearly permits the owner of property to testify and give his opinion of value.  Here, Ron Garraud is the owner of Dodora.  Under Massachusetts law, he may properly rely on any the opinions of others as well as market information in formulating his own opinion.  This means that he can also rely on his own books and records, also.  An expert witness is not necessary.  Mr. Garraud's opinion is necessarily somewhat imprecise, but that does not disqualify him as fixing the amount of damages is the province of the jury, not a witness.

11. Similarly, on the money had and received count , Mr. Garraud can testify as to the amount of money he believes Directi received (or perhaps should have received but for Directi's possible mishandling) from Dodora's clients, based on his examination of Dodora's books and records.  He is the "keeper" of those books and records.  While

4

independent corroborating testimony might be helpful, it is not essential as it is for the jury to determine what weight they give to the evidence.

12. There is also no basis for refusing to allow Mr. Garrud to testify as to damages on the interference count. Directi's argument here initially proceeds on the assumption that Dodora must prove that Directi acted with wrongful motive or intent. While that may well be true in an ordinary case, Directi was acting in <u>this</u> case in a fiduciary capacity as the agent of a receiver. It is well settled that receivers must perform their delegated duties with the high degree of care demanded of a trustee or other similar fiduciary. <u>Crites, Inc., v. Prudential Ins. Co. of America</u>, 322 U.S. 408, 64 S.Ct. 1075, 88 L.Ed. 1356 (1944). Motive or good faith is irrelevant[1]. Instead, given that Directi acknowledges that it has retained a large number of Dodora's accounts allegedly because the clients want to stay with Directi, there is no real question that Directi harmed Dodora by retaining those accounts instead of returning them when return was demanded. A receiver's duties are limited to those conferred upon him, <u>Id</u>., and the receiver in this case had no authority to transfer control and dominion over Dodora's assets to Direccti. "Any profits that might have resulted from a breach of these high standards, including the profits of others who knowingly joined him in pursuing an illegal course of action, would have to be disgorged and applied to the estate." <u>Id</u>.

13. Directi also seeks to prevent Mr. Garraud from testifying, in general, as to damages. As noted above, Massachusetts law clearly allows a property owner to give his opinion of the value of his property. As the owner of Dodora, he can give his opinion of the value of Dodora and its assets. Nothing in Fed.R.Evid. 701 is to the contrary. The rule is

---

[1] At best it is a jury question.

5

phrased in general language to require that such opinion be limited to those opinions or inferences that are rationally based on the witnesses' perceptions; are helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

14. Mr. Garruad's perceptions about the financial affairs of Dodora have a rational basis since he is the keeper of the books and records; those perceptions will be helpful to the jury in determining a fact in issue, i.e., damages; and those perceptions are not based on any scientific, technical or other specialized knowledge. Every juror has some knowledge about maintaining basic financial records, such as a checking account. There is nothing specialized about Dodora's finances that would require an expert or disqualify Mr. Garraud from giving his opinions.

15. Directi also claims that Dodora should be prevented from offering damages testimony because Dodora has admitted that the receiver caused the damage. The problem with this argument is that Directi's assumption of dominion and control was wrongful from the start since the contracts with the receiver were never authorized by the Texas court. The receiver, on the other hand, had apparent authority to assume dominion and control since there was a court order. It is true that lacking the court's authority to transfer the property to Directi, the receiver caused some damage. But Directi never had any authority – apparent or actual – to accept the property from the receiver. Instead, being a competitor of Dodora, Directi knew or believed that it could gain an improper and unfair advantage over Dodora by accepting the property and disregarding the question of whether its

assumption of possession was legal.  Ultimately, there is no question that Directi caused at least some damage, and it is a jury question as to how much.

16. The argument about batchpool connections is similarly flawed.  Directi admits that Dodora was damaged: "There can be no evidence that Dodora was damaged in any way beyond the amount of revenues that Pool.com actually paid …"  To what extent Dodora was damaged is a jury question.

WHEREFORE Dodora requests that the motion be denied in all respects.

June 1, 2005

        Respectfully submitted,
        DODORA UNIFIED COMMUNCATIONS, INC.
        By its attorney;

        /s/     *David G. Baker*
        David G. Baker, Esq.
        105 Union Wharf
        Boston, MA  02109
        BBO # 634889
        617-367-4260

Certificate of Service

The undersigned hereby states upon information and belief that the within Objection was served upon counsel for Direct Information by the Court's CM/ECF system, and I certify that a copy also was served by Email to counsel for the defendant at dhecker@PBL.COM.

        /s/     *David G. Baker*
        David G. Baker, Esq.