UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____
                                                  )
DODORA UNIFIED COMMUNICATIONS, )
INC.,                          )
       Plaintiff,              )
                               )      Civil Action No.
       v.                      )      05-10016-NMG
                               )
DIRECT INFORMATION PVT. LTD. and )
ANSWERABLE, INC.,              )
       Defendants.             )
_____)

**DEFENDANT'S PROPOSED AGREED STATEMENT TO READ TO JURY**

      The defendant, Direct Information Pvt. Ltd., proposes that the following statement for the Court to read to the jury at the beginning of the proceedings. Directi proposed the following statement to the plaintiff but has not yet heard whether it is agreeable to the plaintiff or not.

      The plaintiff, Dodora Unified Communications, Inc., is a Massachusetts company that during 2004 was in the business of assisting customers in registering what are called domain names, so that those customers would have certain exclusive rights to use the domain names for a specified period of time. The defendant, Direct Information Pvt. Ltd., is a company based in India that, among other things, also assists customers in registering their domain names for their exclusive use. You will hear testimony about what these and other companies like them in the industry do. Briefly, however, Dodora, Directi and the other companies that act as so-called registrars provide an electronic or computer means by which a company or person seeking to register a domain name, such as IBM.com or Verizon.com, may in fact register that name with certain businesses that have been created to maintain lists of and to control the registration of

particular domain names. Registrars like Dodora and Directi act as middlemen of sorts between the users of domain names and the businesses that register who has the right to use those names.

In March 2003, a company called Compana sued Dodora in the Texas state courts, alleging that Dodora had breached provisions of an agreement between Compana and Dodora. Compana obtained a judgment of $100,000 against Dodora after Dodora did not respond to the complaint that Compana had filed in the court. Dodora contended, in the Texas case, that it did not respond to the complaint because it did know it had been sued until January 2004. At that point, Dodora learned that the Texas court had appointed a receiver for the assets of Dodora. In essence, a receiver is authorized by court order to attempt to find and to collect assets of a defendant in order to satisfy or to pay off the judgment against it. The Texas state court appointed a man by the name of Michael Bernstein to be the receiver for Dodora. In January 2004, he began to try to collect assets of Dodora to satisfy the judgment in favor of Compana.

Directi was not a party to the litigation between Compana and Dodora and had no involvement in the business deal between Compana and Dodora that led to that litigation. In June 2004, Mr. Bernstein approached Directi to provide certain services to him as the receiver. Directi and Mr. Bernstein entered into two agreements. Under the first agreement, Directi agreed, on behalf of Mr. Bernstein, to manage during the receivership Dodora's domain name business. In essence, Directi would assist customers of Dodora in maintaining their domain name registrations.

Under the second agreement, Directi agreed on behalf of Mr. Bernstein, to manage what are called Dodora's batch pool connections. This second agreement, the so-called batch pool agreement, related to a practice in this industry by which a registrar, such as Dodora or Directi, leases to another company the rights that the registrar has to register domain names that have

expired or have not been renewed for some reason.  Those companies, such as a business called Pool.com, then conduct auctions of the rights to use those expired domain names, for which businesses and individuals are willing to pay.  The business which has leased its batch pool connections, such as Dodora or Directi, then would receive a portion of the revenue generated by the auction of any names it controlled.  The receiver, Mr. Bernstein, had taken control of Dodora's batch pool connections in connection with his activities as the receiver before June 2004.

Directi worked under the two agreements with Mr. Bernstein from mid-June 2004 until mid-December 2004, when Mr. Bernstein, Compana and Dodora entered into a settlement of all issues among them relating to the Texas litigation.  Directi was not involved in that settlement.  Dodora's claims in this case arise out of actions it contends Directi took with regard to the contracts it entered into with Mr. Bernstein, which actions Dodora contends Directi had no right to take.  Directi claims that Directi caused Dodora damages.  Directi denies that it did anything it was not allowed to do or which was improper and that it caused any damage to Dodora.

    Respectfully submitted,

    DIRECT INFORMATION PVT. LTD.,

    By its attorneys,

    s/Dustin F. Hecker

    _____
    Dustin F. Hecker, Esq., BBO# 549171
    Nancy J. Puleo, Esq., BBO 648457
    POSTERNAK BLANKSTEIN & LUND LLP
    The Prudential Tower
    800 Boylston Street
    Boston, MA  02199
    (617-973-6100)

Dated:  June 3, 2005

## CERTIFICATE OF SERVICE

    I, Dustin F. Hecker, hereby certify that on this 3rd day of June, 2005, I caused a copy of the foregoing to be served by the Court's CM/ECF system and by electronic mail, on: David Baker, Esq., 105 Union Wharf, Boston, Massachusetts 02109.

                                  s/Dustin F. Hecker

                                  Dustin F. Hecker

ID # 433404v01/14386-2/ 06.03.2005