UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DODORA UNIFIED COMMUNICATIONS, INC.

                          Plaintiff,

v.

DIRECT INFORMATION PVT. LTD., LOGICBOXES,
WEBHOSTING.INFO, TRANSECUTE (I) PVT LTD.,
RESELLERSRS, INC., AND ANSWERABLE, INC.,
COLLECTIVELY d/b/a "DIRECTI.COM"

                          Defendants.

Civil Action
No. 05-10016-NMG

PLAINTIFF'S OBJECTION TO MOTION FOR DIRECTED VERDICT

NOW COMES Dodora Unified Communications, Inc., (hereinafter "Dodora") and objects to the motion of Direct Information Pvt. Ltd. for a directed verdict. In support of this objection, Dodora states as follows:

1.     In considering a motion for a directed verdict, "the court does not weigh the evidence, but draws all factual inferences in favor of the nonmoving party." Lytle v. Household Mfg., Inc. 494 US 545, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990), citing Anderson v. Liberty Lobby, Inc., 477 US 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). "Thus, although a court might, after reviewing the evidence, decide in favor of the party moving for a dismissal under Rule 41(b), that court might not take the same case away from the jury because it might believe that the jury could reasonably find for the nonmoving party. ... As we have long recognized, a jury and a judge can draw different conclusions from the same evidence." Id.

2.     The First Circuit Court of Appeals has said this about motions under FRCP 50(a):

      Judgment as a matter of law under Rule 50(a) is appropriate if "there is no legally sufficient evidentiary basis for a reasonable jury to find for the [non-moving] party." Fed.R.Civ.P. 50(a)(1). In reviewing the district court's ruling, we apply "the same standards as the district court," Katz v. City Metal Co., 87 F.3d 26, 28 (1st Cir.1996) (*quoting* Andrade v. Jamestown Housing Auth., 82 F.3d 1179, 1186 (1st Cir.1996)), meaning that we "examine the evidence and all fair inferences in the light most favorable to the plaintiff and may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." Id. (*quoting* Richmond Steel, Inc. v. Puerto Rican Am. Ins. Co., 954 F.2d 19, 22 (1st Cir.1992)). If we conclude that "fair-minded persons could draw different inferences from the evidence presented at trial, the matter is for the jury," and judgment as a matter of law was improperly granted. Espada, 312 F.3d at 2. Nevertheless, if the non-moving party has the burden of proof in the underlying case, that party must have presented "more than a mere scintilla of evidence in its favor" to withstand judgment as a matter of law. Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 76 (1st Cir.2001) (*quoting* Katz, 87 F.3d at 28) (internal quotation marks omitted).

3.    "Rule 50(a) exists in part to afford the responding party 'an opportunity to cure any deficiency in that party's proof that may have been overlooked until called to the party's attention by a late motion for judgment.' Fed.R.Civ.P. 50, advisory committee's note (1991 amendment). In other words, Rule 50(a) should be construed 'to avoid tactical victories at the expense of substantive interests.' Blinzler v. Marriott Intern., Inc., 81 F3d 1148 (1st Cir. 1996)." Where the Court has reservations about the sufficiency of the evidence on an issue, it is appropriate to allow a plaintiff to reopen the evidence. Id.

4.    Put another way, a motion pursuant to FRCP 50(a) "must also be made with sufficient specificity to allow the district judge to understand precisely why the evidence is insufficient." Wells Real Estate v. Greater Lowell Bd. of Realtors, 24 F.3d 1480 (1st Cir. 1988). The plaintiff, too, needs to know why the defendant believes the evidence to be insufficient. *Cf.* Blinzer, *supra*.

The Conversion Claim

5. The First Circuit Court of Appeals has indicated that an action for conversion "'cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself or to deprive the rightful owner of it, or destroyed the property.'" It is no defense to conversion for defendant to claim that he acted in good faith, reasonably believing that he had a legal right to possession of the goods. Kelley v. LaForce, 288 F.3d 1 (1st Cir. (Mass.) 2002) *(internal citations omitted)*.

6. Here, Directi relies entirely on the proposition that it was merely acting pursuant to contracts with the receiver, claiming that because the contracts were valid[1], Directi had a legal right to do what it did. The argument fails because a good faith belief in a legal right to possession is no defense. Kelley, *supra*.

7. Even if the contracts were valid as between Directi and the Receiver, the evidence in this matter (both testimonial and documentary) would support a finding by the jury that the default judgment against Dodora was based on a fraud upon the Texas court. Mr. Garraud has testified – without rebuttal and in both live testimony and affidavits – that Dodora was never served with process. He further testified to the effect that once Dodora was able to obtain representation and appear in the Texas court, the Texas court was sufficiently impressed by the Bill of Review to order the case to a speedy trial, resulting in Compana being persuaded that settlement was its best option. Mr. Garraud also testified, without contradiction, that Compana was never paid anything, to the best of his knowledge. The jury could certainly believe that if Compana believed in the merits of it case, it would not have settled, at least not without being paid something.

---

[1] Dodora does not agree with the court's interlocutory ruling on this issue.

8. In addition, counsel for Directi insisted upon the Admission that Pool.com had paid substantial sums of money to Directi. *See* Requests for admissions number 17. Mr. Garraud testified that Dodora had received only $2,566.42, paid only after this Court ordered it to do so.

9. Based on the foregoing, the jury also could logically conclude that if the underlying judgment was invalid, so was the receivership and therefore Directi's possession of Dodora's assets was wrongful.

The money had and received claim

10. Similarly, the jury could infer from Admission 17 that Directi collected substantial sums of money based on Dodora accounts and since Mr. Garraud has testified that Dodora has not received any of that money, that Directi is keeping that money under circumstances that make it unfair and inequitable for Directi to keep it. In general, the law says that one receiving money of another without just right to it, must restore it to the other. National Shawmut Bank of Boston v. Fidelity Mut.Life Ins. Co., 318 Mass. 142, 61 N.E. 2d 18 (1945), *cited in* Interstate Litho Corp. v. Brown, 255 F.3d 19 (1st Cir. 2001).

11. Directi's entire case seems to rest on the premise that the contracts between it and the receiver were valid. Since it does not support Directi's view of the case, Directi ignores the fact that the underlying judgment, itself, was not valid – a fact that Compana essentially admitted when it settled the Texas litigation without receiving any money at all.

12. On the present record, the jury would be justified in believing that but for Compana's illegitimate lawsuit against Dodora, Dodora would have been managing its own business

and would have not have been driven "to the brink of bankruptcy", as observed by Directi's counsel. In other words, there is evidence from which the jury could conclude that it would be unfair and inequitable to allow Directi to keep the money it received during the receivership

### The interference claim

13. As with the other counts, Directi bases its defense to this count on an assertion that its actions were legal and not wrongful, but also admits in this motion that its actions were motivated, at least in part, by its own pecuniary interests. Directi has admitted (rather unashamedly) that in accepting the responsibilities of the contracts with the receiver, it saw an opportunity to induce Dodora's customers to switch their allegiance to Directi by competing "based on superior service and/or lower prices". Directi has also admitted that many of Dodora's customers were swayed by Directi's blandishments, and that others went elsewhere without any effort on Directi's part to maintain the at least nominal goodwill inherent in any business relationship.

14. Directi was acting in a fiduciary capacity as the agent of a receiver. It is well settled that receivers must perform their delegated duties with the high degree of care demanded of a trustee or other similar fiduciary. Crites, Inc., v. Prudential Ins. Co. of America, 322 U.S. 408, 64 S.Ct. 1075, 88 L.Ed. 1356 (1944). Motive or good faith is irrelevant[2]. Instead, given that Directi acknowledges that it enticed (or tried to entice) Dodora's clients to switch to Directi, and that it has retained a large number of Dodora's accounts allegedly because the clients want to stay with Directi, the evidence would support a jury finding

---

[2] At best it is a jury question.

5

that Directi harmed Dodora by retaining those accounts instead of returning them when return was demanded. A receiver's duties are limited to those conferred upon him, Id., and the receiver in this case had no authority to transfer control and dominion over Dodora's assets to Directi. "Any profits that might have resulted from a breach of these high standards, including the profits of others who knowingly joined him in pursuing an illegal course of action, would have to be disgorged and applied to the estate." Id.

15. Directi's position is also contrary to the spirit, if not the letter, of the preliminary injunction issued by this Court. The order requires Directi, in summary, to transfer control of and return to Dodora all of the information regarding the domain names of Dodora's customers. The injunction also <u>expressly</u> prohibited Directi from using such information other that in its defense of this action or valid tax or accounting purposes. Lastly, Directi was to cooperate in informing Dodora's customers that they could transfer back to Dodora, should they choose to do so.

16. "Claims of intentional interference with contractual or advantageous relations require a showing that the defendant knowingly and for an improper purpose or by improper means induced a party to breach a contract or not to enter into or continue a business relationship, resulting in damage." Buster v. George W. Moore, Inc. 438 Mass. 635, 783 N.E. 2d 299 (2003) *cited in* Zyla v. Wadsworth, Div. Of Thomson Corp., 360 F.3d 243 (1st Cir. 2004). In order to prevail on a claim of intentional interference with advantageous business relations, a plaintiff must demonstrate actual harm to an existing or prospective relationship of economic benefit. Lynch v. City of Boston, 180 F.3d 1 (1st Cir. 1999).

17. There is a difference between normal and acceptable competition in the market place and the sort of competition that took place here. Dodora <u>could not</u> compete – indeed, its ability to business was hamstrung by a receivership that we now know was fatally flawed, being based on an invalid default judgment. The jury could find that Directi knew, at a minimum, that Dodora could not compete and thus that Directi's purpose in soliciting Dodora's customers was wrongful.

### The 93A claim

18. Directi's argument on this count is conclusory, at best. Directi first claims that none of the conduct complained of took place primarily and substantially in Massachusetts, but fails to explain how Directi took control of Dodora's assets without coming to Massachusetts, given that all of the assets are located in Massachusetts. Additionally, Directi relies on the theory that since the contracts were valid as between it and the Receiver, its actions were not forbidden by Chapter 93A.

19. As suggested in paragraph 17, above, Directi's actions were patently unfair. Dodora was legally incapable of doing business because of the receivership, and Directi knew it. Yet Directi solicited Dodora's clients and thereby breached its fiduciary duty not to deal with Dodora's property in a manner that was harmful to Dodora.

20. The Massachusetts Supreme Judicial Court has stated that

> "the relief available under c. 93A is "sui generis. It is neither wholly tortious nor wholly contractual in nature, and is not subject to the traditional limitations of preexisting causes of action." <u>Slaney v. Westwood Auto, Inc.</u>, 366 Mass. 688, 704 (1975). It "mak[es] conduct unlawful which was not unlawful under the common law or any prior statute." <u>Commonwealth v. DeCotis</u>, 366 Mass. 234, 244 n. 8 (1974). Thus, a cause of action under c. 93A is "not dependent on traditional tort or contract law concepts for its definition." <u>Heller v. Silverbranch Constr. Corp.</u>, 376 Mass. 621, 626 (1978). See <u>Nei v. Burley</u>, 388 Mass. 307, 313

7

(1983) ("[A]nalogies between common law claims for breach of contract, fraud, or deceit and claims under c. 93A are inappropriate because c. 93A dispenses with the need to prove many of the essential elements of those common law claims").

Kattar v. Demoulas, 433 Mass. 1 (2000)

21. To prevail on a count under Chapter 93A

> "The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 396 N.E.2d 149, 153 (1979); see also Gooley v. Mobil Oil Corp., 851 F.2d 513, 515-16 (1st Cir.1988) (unscrupulous or unethical conduct usually required); Williams v. Arndt, 626 F.Supp. 571, 581-82 (D.Mass.1985) (similar). In other words, a chapter 93A claimant must show that the defendant's actions fell "within at least the penumbra of some common-law, statutory, or other established concept of unfairness," or were "immoral, unethical, oppressive or unscrupulous," and resulted in "substantial injury ... to competitors or other businessmen." PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, 321 N.E.2d 915, 917 (1975); accord Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 17-18 (1st Cir.1985); Levings, 396 N.E.2d at 153.

Quaker State Oil Refining Corp. v. Garrity Oil. Co., Inc., 884 F.2d 1510 (1st Cir. 1989)

22. Directi's conduct here surely raises an eyebrow. As argued above, Directi violated its fiduciary obligations within the context of the receivership. Soliciting Dodora's customers was at least unscrupulous, if not oppressive and unethical since while Directi had control of Dodora's assets, Dodora could not do business.

Summary

23. All in all, there is sufficient evidence here for all of the jury counts to be submitted to the jury. The court is not allowed to engaged in weighing the evidence; making credibility assessments, or weighing the evidence. This is solely the province of the jury, and Dodora's evidence, viewed in the light most favorable to it, warrants submission to the jury.

WHEREFORE Dodora requests that the motion be denied .

June 8, 2005

                              Respectfully submitted,
                              DODORA UNIFIED COMMUNCATIONS, INC.
                              By its attorney;

                              /s/   David G. Baker
                              David G. Baker, Esq.
                              105 Union Wharf
                              Boston, MA  02109
                              BBO # 634889
                              617-367-4260

                              <u>Certificate of Service</u>

The undersigned hereby states upon information and belief that the within Objection was served upon counsel for Direct Information in open court on this date..

                              /s/   David G. Baker
                              David G. Baker, Esq.